UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 06-292-C**

**PNC BANK, NATIONAL ASSOCIATION,**                **PLAINTIFF,**

**V.**       **MEMORANDUM OPINION AND ORDER**

**M.T. PERSON, III, ET AL.,**                     **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendants' motion to disqualify (DE 65). The court, having reviewed the record and being otherwise sufficiently advised, will deny the motion.

**I. Factual Background**

The plaintiff, PNC Bank, National Association ("PNC"), brings a claim for breach of contract against the defendants, M.T. Person, III ("Person") and The Providence Group, Inc. ("Providence"), arising out of the planned construction of a housing project in Louisville, Kentucky. PNC is represented in this action by attorneys from Andrews Kurth LLP ("AK"), a law firm based outside of the state of Kentucky. On July 10, 2006, two attorneys from AK, Charles Perry and Mark Shoffner, were granted *pro hac vice* admission to the bar of this court to represent PNC.

On May 11, 2006, a company called Transcontinental Realty Investors, Inc. ("TRI") filed a lawsuit in Texas against Person and several other defendants. TRI alleged claims against the defendants for fraud, misrepresentation, and negligence

arising out of the sale of general partnership and managing member interests in various business entities. On May 22, 2006, Person contacted an attorney named Kin Gill, who at the time practiced with AK, regarding the possibility of having Mr. Gill represent him in the action commenced by TRI. Mr. Gill expressed interest in representing Person and asked Person to forward him a copy of the TRI complaint.

According to the defendants, Person participated in at least three conference calls regarding the TRI litigation with Mr. Gill and other attorneys who practiced with AK during the week following this initial contact. However, the defendants claim that Person discussed various other matters with these attorneys, including the construction project in Louisville, Kentucky that is the focal point of this action. The defendants also assert that Mr. Gill openly expressed interest in handling all of Person's legal business.

On May 31, 2006, AK informed Person of its discovery that it had potential litigation against him and that it would be unable to represent him due to this conflict of interest. Despite Person's apparent willingness to waive any conflict, Mr. Gill informed him via email that PNC would not permit AK to represent him even with such a waiver. On June 14, 2006, PNC initiated this action against the defendants. The defendants filed the motion to disqualify that is currently under review on March 26, 2007.

### II. Legal Analysis

The defendants claim that AK must be disqualified as counsel for the plaintiff

2

in this action as a result of its attempted representation of Person in the TRI litigation. More specifically, they assert that an attorney-client relationship existed between Person and AK, and that, before this relationship was terminated, Person presented information related to this lawsuit to attorneys who worked at AK, which these attorneys willingly accepted. For the following reasons, the court is unpersuaded by the defendants' arguments.

> Other courts have traditionally viewed motions to disqualify with caution:
>
> The power to disqualify an attorney, or attorneys, from a case is incidental to all courts, and a district court is obliged to consider unethical conduct by an attorney in connection with any proceeding before it. However, a trial court does not possess unfettered discretion to disqualify counsel. Furthermore, a violation of the rules of professional ethics does not automatically necessitate disqualification of an attorney. The extreme sanction of disqualification should only be utilized when there is a reasonable probability that some specifically identifiable impropriety actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice. While motions to disqualify may be legitimate and necessary under certain circumstances, they should be viewed with extreme caution for they can be misused as techniques of harassment.

*SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp. 2d 863, 865-66 (S.D. Ohio 2002) (citations omitted); *see also Zurich Ins. Co. v. Knotts*, 52 S.W.3d 555, 560 (Ky. 2001) ("[D]isqualification is a drastic measure which courts should be hesitant to impose except when absolutely necessary."); Ky. Sup. Ct. R. 3.130 (1.7), cmt. 14. As the moving parties, the defendants have the burden of proving that opposing counsel should be disqualified. *Bartech Indus., Inc. v. Int'l Baking Co., Inc.*, 910 F. Supp. 388, 392 (E.D. Tenn. 1996).

Motions to disqualify are governed by two sources of authority. *Republic Servs., Inc. v. Liberty Mut. Ins. Co.*, 2006 WL 3004014, at *4 (E.D. Ky. Oct. 20, 2006). First, all attorneys are bound by the local rules of the court in which they appear. *Id.* Thus, pursuant to Local Rule 83.2(a)(4), the attorneys of record in this action who practice with AK are subject to the Kentucky Rules of Professional Conduct and the judicial decisions interpreting those Rules. Second, since motions to disqualify affect substantive rights of the parties, such motions are decided by applying standards developed under federal law. *Bartech*, 910 F. Supp. at 392.

When, as here, an issue arises regarding representation adverse to a former client, a three-part test governs the analysis of motions to disqualify counsel: (1) whether a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) whether the subject matter of those relationships was/is substantially related; and (3) whether the attorney acquired confidential information from the party seeking disqualification. *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990). PNC alleges that none of these three requirements has been satisfied.

With regard to the first element, the Kentucky Rules of Evidence define "client" as including "anyone who consults a lawyer with a view to obtaining professional legal services from the lawyer." Ky. R. Evid. 503(a)(1); *see also Lovell v. Winchester*, 941 S.W.2d 466, 467 (Ky. 1997) (holding that attorney-client privilege attached after initial meeting with prospective client and that attorney's

4

retention of documents gave rise to a conflict of interest when he later represented party adverse to prospective client). Thus, when Person discussed the possibility of representation by AK with Mr. Gill, he arguably became a "client" of AK.

Even assuming, however, that Person and AK did have an attorney-client relationship, the TRI litigation and this action are not substantially related. The subject matters of two causes are "substantially related" if the similarity of the factual and legal issues creates a genuine threat that the affected attorney may have received confidential information in the first cause that could be used against the former client in the present cause. *State ex rel. Wal-Mart Stores, Inc. v. Kortum*, 559 N.W.2d 496, 501 (Neb. 1997). As previously noted, the TRI litigation in Texas is brought by investors, and it deals with alleged fraud and misrepresentation arising out of the sale of ownership interests in a number of different housing projects and business entities. This action involves a claim for breach of contract brought by a financial institution that arises from a note and guaranty executed by the defendants. Though the contracts at issue here are related to a construction project in Louisville, Kentucky, neither party has alleged that this project has any connection with the projects at issue in the TRI litigation.

Similarly, the defendants have failed to satisfactorily show that AK "acquired confidential information" from Person regarding this suit. The defendants make vague allegations that Person, Mr. Gill, and other AK attorneys discussed other projects with which he was involved at the time of the negotiations, including the

5

project in Louisville out of which this suit arises.  However, even under the factual situation presented by the defendants, the relationship between Person and AK lasted no more than nine days, during which time AK conducted an investigation to ascertain whether it had any conflicts of interest that would preclude it from representing Person.  Without some specific evidence that privileged information regarding the facts of this case was transmitted to AK, the court is unwilling to impose the sanction of disqualification based on the unsupported implication that Person and AK attorneys discussed Person's construction project in Louisville during their brief attorney-client relationship.[1]  *See also SST Castings*, 250 F. Supp. 2d at 869 (noting that "many courts have rejected motions to disqualify based upon an attorney's background information or familiarity of the workings of a corporation").

Though the defendants rely heavily on *Lovell,* the facts of that case are distinguishable from those of the case at hand.  In *Lovell*, the plaintiffs met with an attorney named Charles King to discuss King's possible representation of them in a suit involving a land transaction they wished to assert against Minnie Kidd.  *Lovell*,

---

[1] The court is also unpersuaded by the defendants' claim that disqualification is appropriate because AK "actively courted" all of Person's work. DE 65, at 4. The only evidence which supports this assertion consists of two emails between Person and Mr. Gill on May 23, 2006.  The first of these messages is from Person and states, "Would you possibly be interested in all of my work?"  Mr. Gill then responded, "Sure.  We can definitely discuss that."  *See* Exhibit B to Perry Declaration filed with DE 68.  This statement neither qualifies as an "active courting" of Person's legal matters nor does it show that AK ascertained any confidential information after this conversation.

941 S.W.2d at 466-67. After their meeting with King, the plaintiffs left documents relating to the land transaction with him. *Id.* at 467. About one month later, King returned the documents to the plaintiffs and declined to represent them. *Id.* When the plaintiffs retained another attorney and sued Kidd, Kidd hired King to represent her against the plaintiffs' claims. *Id.* Though the trial court denied the plaintiffs' motion to disqualify King, the Kentucky Supreme Court reversed. In doing so, it found that, "[a]fter King retained documents pertaining to the case for a month, the presumption arises that he became knowledgeable of their contents and that he learned confidential information relevant to the case. This gives rise to a conflict of interest and King was obligated to decline representation of Kidd." *Id.* at 467.

In this case, however, the defendants do not claim that Person transferred any sensitive or confidential documents to AK. Further, unlike the attorney in *Lovell*, AK does not seek to represent PNC on the same matter as to which its attorneys dealt with Person; indeed, Mr. Gill, who appears to be the person who primarily interacted with Person on behalf of AK, is no longer employed at that firm. Due to the differences between this case and *Lovell*, the court finds that the defendants' reliance upon it is misplaced.

Finally, even if the court were convinced that AK's communications with Person in May of 2006 did ripen into a disabling conflict of interest, it is persuaded by the plaintiff's arguments that Person waived such conflict and that the specter of any conflict is outweighed by its interest in retaining its counsel of choice.

Person knew that AK represented a potentially adverse party when AK declined to represent him on May 31, 2006.  Nonetheless, the defendants waited nearly a year after PNC filed this suit to raise this potential conflict of interest as an issue.  In the interim, attorneys who practice with AK have litigated a number of substantive motions on behalf of PNC, certain of which are now fully briefed and ripe for review.  If AK were disqualified as counsel for PNC, then PNC essentially would be forced to "start from scratch" in this action.  Courts have previously deemed similar circumstances to amount to a waiver of the right to move for disqualification.  *See In re Valley-Vulcan Mold Co.*, 5 Fed. Appx. 396, 401 (6th Cir. 2001) (holding that party waived right to object to conflict when issue was raised the week prior to trial and stating "[i]t is well settled that a former client who is entitled to object to an attorney representing an opposing party . . . but who knowingly refrains from asserting it promptly is deemed to have waived that right") (citation omitted); *Swilley v. Tipton*, 2007 WL 316951, at *7 (E.D. Ky. Jan. 30, 2007) ("The former client cannot sit on the right for tactical purposes until it would be most helpful to his position.").

      In sum, the court finds, pursuant to the three-part test set forth in *Dana Corp.*, that AK is not subject to disqualification based on a conflict of interest and that the public interest does not militate in favor of disqualification.  Alternatively, the court also finds that Person waived any such conflict by not asserting it earlier.  Accordingly,

**IT IS ORDERED** that the defendants' motion to disqualify (DE 65) is **DENIED**.

Signed on  May 3, 2007

**Jennifer B. Coffman, Judge**
**United States District Court**